ARKANSAS RESIDENTIAL ASSISTED LIVING
ASSOCIATION, INC., Baxter Retirement Village, L.L.C. and
Retirement Centers of Arkansas *v.*
ARKANSAS HEALTH SERVICES PERMIT COMMISSION
and Arkansas Health Services Permit Agency

05-183 220 S.W.3d 665

Supreme Court of Arkansas
Opinion delivered December 15, 2005

[Rehearing denied January 19, 2006.*]

---

* DICKEY, J., not participating.

374

*Mitchell, Blackstock, Barnes, Wagoner, Ivers & Sneddon, PLLC,* by: *Clayton Blackstock,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Warren T. Readnour,* Ass't Att'y Gen., for appellees.

JIM HANNAH, Chief Justice. Arkansas Residential Assisted Living Association, Inc., Baxter Retirement Village, LLC, and Retirement Centers of Arkansas, Inc. (collectively referred to as the Association) appeal a decision of the Pulaski County Circuit Court finding that regulation 500M of the Health Services Permit Commission does not violate the statutes concerning assisted-living facilities in Arkansas. The Association argues that in applying regulation 500M and failing to count residential-care-facility permits of approval in its count of assisted-living permits of approval, the Commission is in violation of its statutory duty to evaluate the availability and adequacy of assisted living health-care services provided by Act 1230 of 2001.[1] We hold that the Commission's rule is not in conflict with the assisted or other long-term-care statutes.

## Facts

The issue in this case concerns permits of approval to operate long-term-care facilities. A permit of approval is required before anyone may begin operation of a long-term-care facility.[2] The statutes concerning long-term-care facilities are found in title 20, chapter 10 of the Arkansas Code Annotated, and under Act 1238 of 1993, the State began to issue permits of approval for "residential-care facilities."[3] Residential-care facilities are facilities for those persons whose functional capacities are not so severely impaired that they require hospitalization or nursing home care, but who do require some assistance with daily living.[4] In 2001, pursuant to the Arkansas Assisted Living Act, the State began to issue permits of approval for operation of assisted-living facilities.

---

[1] Ark. Code Ann. §§ 20-10-1701—1709 (Supp. 2003).

[2] Ark. Code Ann. § 20-8-109 (Supp. 2003).

[3] Licensing and regulation of nursing homes by the State had commenced previous to Act 1238 of 1993.

[4] Ark. Code Ann. § 20-10-101(13) (Repl. 2000).

Assisted-living facilities provide persons with housing, meals, laundry, socialization, transportation, personal services, and limited nursing services.[5] Both parties agree that there is an overlap in the services provided by residential and assisted-living facilities.

The Association argues that residential-care facilities and assisted-living facilities serve the same population. The Association further argues that pursuant to statute, permits of approval for residential-care facilities must be considered and counted as permits of approval for assisted-living facilities when the Commission determines the adequacy of the number of assisted-living facilities in the various locales and areas of the state. The Association also further argues that regulation 500M violates the statutory obligation to assure adequate long-term-care facilities and services by allowing the Commission to ignore already issued permits of approval for residential-care facilities in forecasting and deciding on the number of permits of approval needed to serve the population in various locales and areas of the state. The Association asserts that the population served by residential care and assisted-living facilities will be overserved under the application of regulation 500M, or in other words, that there will be substantially more accommodations available for this population than will be needed.

Both the Commission and the Association filed motions for summary judgment. The circuit court found that the regulation was valid, stating:

> Following the commission's evaluation and interpretation of the relevant statutes, this court cannot say that the Commission has acted in an arbitrary or capricious manner, or that it abused its discretion. Rather, there is substantial evidence to support the Commission's decision to issue HSC Regulation 500M, Assisted Living Methodology, based on research of the Arkansas Health Service Permit Agency.

The Association appeals, arguing the circuit court erred.

### Standard of Review

The Association appeals the circuit court's order granting summary judgment in favor of the Commission. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and

---

[5] Ark. Code Ann. § 20-10-1703(3) (Supp. 2003).

the party is entitled to judgment as a matter of law. *Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Id.*

■ The Association filed a declaratory judgment action in circuit court challenging the validity of regulation 500M Assisted Living Methodology as allowed under the Arkansas Administrative Procedure Act. *See* Ark. Code Ann. § 25-15-207 (Repl. 2002). As previously stated, the Association alleged that rule 500M violates the Assisted Living Act because the Assisted Living Act requires that all residential facilities' permits of approval be counted as assisted-living permits of approval. We are thus asked to interpret the Commission's regulation. When considering the validity of a regulation, the court must give the regulation the same presumption of validity as it would a statute. *Ark. Health Servs. Comm'n v. Reg'l Care Facilities, Inc.*, 351 Ark. 331, 93 S.W.3d 672 (2002). In reviewing the adoption of regulations by an agency under its rule-making procedures, a court is limited to considering whether the administrative action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* A court will not attempt to substitute its judgment for that of the administrative agency. *Id.* A rule is not invalid simply because it may work a hardship, create inconveniences, or because an evil intended to be regulated does not exist in a particular case. *Id.*

### The Duties of the Commission

The Association argues that the Commission is under an obligation to determine the actual needs of Arkansans for assisted-living accommodations. Pursuant to Ark. Code Ann. § 20-8-103(a) (Supp. 2003), the Commission "shall evaluate the availability and adequacy of health facilities and health services as they

relate to long-term-care facilities. . . ." Further, under Ark. Code Ann. § 20-8-103(b) (Supp. 2003), the Commission "shall designate those locales or areas of the state in which . . . the health service needs of the population are underserved." Under Ark. Code Ann. § 20-8-103(c) (Supp. 2003), the commission "may specify within locales or areas, categories of services which are underserved and overserved. . . ."

 According to Ark. Code Ann. § 20-8-103(a) and Ark. Code Ann. § 20-8-104 (Supp. 2003), the Commission is to evaluate the adequacy of health facilities, and through the Health Services Permit Agency, the Commission is responsible for permitting of health facilities. Permitting includes analysis of issues such as whether a new health facility is needed, whether the facility can be staffed, whether it is economically feasible, and whether it will foster cost containment. *See, e.g.*, Ark. Code Ann. § 20-8-107 (Supp. 2003). The purpose behind the statutes is to provide adequate and appropriate health facilities and services, for example as is set out in the Arkansas Assisted Living Act, where the purpose is stated as promoting "the availability of appropriate services" for those who need assisted-living services. Ark. Code Ann. § 20-10-1702(a)(1) (Supp. 2003). The Association argues that one purpose of the Assisted Living Act is to "ensure that 'permits of approval' are based on actual needs of Arkansans." To the extent that the Association is arguing that this means assuring availability of adequate and appropriate facilities and services, the Association is correct.

### Whether Permits of Approval for Residential-Care Facilities Must be Counted as Permits of Approval for Assisted-Living Facilities

The Association argues that residential-care facilities and assisted-living facilities serve the same needs of the same population. Based on this premise, the Association argues that under Ark. Code Ann. § 20-10-1709(a) (Supp. 2003), which provides that permits of approval for residential-care facilities "shall also be considered permits of approval for assisted living without further action," all permits of approval for residential-care facilities must be counted as permits for approval of assisted-living facilities. The Association argues that if this is not done, more accommodations for this population will be created than needed.

The purpose of long-term-care statutes is to assure adequacy and availability of appropriate health care facilities and services to the populations that need them. The Association acknowledges that it is concerned about added competition, but also argues that "overbedding" of health care facilities can result in higher costs. Higher costs would certainly run counter to the cost containment concern noted in Ark. Code Ann. § 20-8-107. In that same section, the General Assembly notes concern for whether the facility can be adequately staffed and whether the project is economically feasible. Based on the purpose of long-term care regulation, to assure that adequate and appropriate health care facilities and services are available, it can certainly be argued that regulations that make provision of services unfeasible certainly do not comply with the obligation to provide adequate and appropriate health care facilities and services.

██ The Commission evaluates the need for residential-care facilities and the need for assisted-living facilities separately. While as the Association notes, Ark. Code Ann. § 20-10-1709(a) provides that "permits of approval for residential-care facilities shall be considered permits of approval for assisted-living facilities without further action," Ark. Code Ann. § 20-10-1704(h)(1) (Supp. 2003) provides that "residential-care facilities that choose not to become assisted-living facilities will be permitted to provide Medicaid personal care for those residents." Therefore, it is clear that the legislature did not intend that residential-care facilities automatically become assisted-living facilities without some action on the part of the residential-care facility. Consistent with this conclusion, Ark. Code Ann. § 20-10-1707 (Supp. 2003) requires that a license be acquired in order to operate an assisted-living facility. Similarly, Ark. Code Ann. 20-10-1702(a)(4) (Supp. 2003) provides that "[r]esidential care facilities have been providing many assisted-living services for years and should be allowed to participate in the assisted-living program." Also, residential-care facilities are to be included "in the assisted-living program." Ark. Code Ann. § 20-10-1702(a)(5) (Supp. 2003). Based on the above, we reject the claim by the Association that permits of approval for residential-care facilities must be counted as permits of approval for assisted-living facilities. Therefore, regulation 500M is not invalid on the basis that it conflicts with Ark. Code Ann. § 20-10-1709.

*Statutory Duty to Evaluate Adequacy of Facilities*

██ The Association also argues that under regulation 500M, the failure to consider residential-care facilities as assisted-living facilities violates the Commission's obligation to evaluate the adequacy of long-term-care facilities under Ark. Code Ann. § 20-8-103. As the circuit court noted, the decision to issue and abide by regulation 500M was not arbitrary. The Commission and the Health Services Permit Agency engaged in significant research and analysis before issuing regulation 500M. Not only were Arkansas statutes considered, but there were also surveys undertaken regarding how other states were serving their populations who needed assisted-living services. The Commission also held meetings with providers and others to discuss Arkansas facilities and the needs in Arkansas. In addition, as the Commission notes, population projections were considered, and there was a considered decision on just what services and facilities would be needed in the future in Arkansas. Based on the statutes cited and the facts of this case, we cannot say that the administrative action in adopting regulation 500M was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

DICKEY, J., not participating.