Cite as 2026 Ark. App. 205

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-25-106

| | |
|---|---|
| PATRICK HRDLICHKA | Opinion Delivered April 1, 2026 |
| APPELLANT | |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04CV-23-3080] |
| SAMANTHA BENGSTON | HONORABLE JOHN R. SCOTT, |
| APPELLEE | JUDGE |
| | DISMISSED |

**STEPHANIE POTTER BARRETT, Judge**

Patrick Hrdlichka, pro se, appeals from the Benton County Circuit Court order awarding appellee, Samantha Bengtson, $10,000.00 in compensatory damages as well as $237.50 in costs under Arkansas Code Annotated section 16-118-107 (Repl. 2016). On appeal, Hrdlichka argues (1) the circuit court incorrectly applied Arkansas Code Annotated section 16-118-107; (2) there was no evidence of felony conduct introduced, so he cannot be liable under Arkansas Code Annotated section 16-118-107; (3) compensatory damages were awarded without meeting the standard of preponderance of the evidence; (4) the circuit court's interpretation of Arkansas Code Annotated section 16-118-107 contradicts well-established Arkansas jurisprudence; and (5) the court's ruling violates his constitutional guarantee to equal protection under article 2, section 3 of the Arkansas Constitution.

Bengtson did not file a response brief in this appeal. Due to numerous fatal briefing deficiencies under the Rules of the Supreme Court and Court of Appeals and Arkansas Rules of Appellate Procedure–Civil that prevent us from engaging in meaningful review, including the submission of fictitious cases, we dismiss the appeal.

On November 7, 2023, Bengtson filed a complaint in the Benton County Circuit Court alleging that on the night of February 3, 2022, Hrdlichka committed a felonious second-degree battery against her, and she suffered damages as a result. Bengtson sought to recover damages under Arkansas Code Annotated section 16-118-107, which allows for crime victims to seek damages in a civil action. After a bench trial, the circuit court denied Bengtson's request for punitive damages but awarded Bengtson $10,000.00 in compensatory damages plus interest at the rate of 5 percent until paid plus the cost of the service and filing fees. Hrdlichka did not object to the court's award of damages. On November 1, 2024, the circuit court entered its written judgment awarding Bengtson $10,000.00 in compensatory damages and an additional $237.50 in costs.

The standard of review on appeal from a bench trial is whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See, e.g.*, *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 640, 269 S.W.3d 362, 368 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been made. *Id.* Facts in dispute and determinations of credibility are solely within the province of the fact-finder. *Id.*

The present appeal contains multiple fatal briefing deficiencies that prevent us from conducting a meaningful review. Parties appearing pro se, like Hrdlichka, receive no special consideration of their argument and are held to the same standard as licensed attorneys. *See Perry v. State*, 287 Ark. 384, 699 S.W.2d 739 (1985).

Hrdlichka's brief fails to comply with Rule 4-2 of the Rules of the Arkansas Supreme Court and Court of Appeals in numerous respects. Rule 4-2(a) prescribes the required contents and organization of an appellant's brief, and the deficiencies here are pervasive. The points on appeal and the table of contents are not arranged in the order required by the rule. Ark. Sup. Ct. R. 4-2(a)(2)–(3). The statement of facts fails to include citations to the record for nearly the entirety of the narrative and omits essential procedural history necessary for appellate review. Ark. Sup. Ct. R. 4-2(a)(6). Instead of presenting a unified statement of the case and the facts as contemplated by the rule, Hrdlichka includes a separate paragraph labeled "Statement of the Case," further departing from the prescribed structure. *Id.* Moreover, the argument section is not presented under clear subheadings numbered to correspond with the points on appeal. Rule 4-2(a)(7) requires that each argument be set out under a separate, clearly designated heading that corresponds to the point relied on. This requirement ensures that the court and opposing parties may readily identify the issues presented for review. Hrdlichka's failure to organize the argument in this manner renders the brief difficult to follow and inhibits meaningful appellate consideration. Although any one of the above-described deficiencies, viewed in isolation, might appear technical or minor, taken together they reflect a complete failure to comply with Rule 4-2.

Even more concerning to this court is the fact Hrdlichka cites multiple cases that, upon review, do not exist. The authorities relied on in support of his arguments are not found in the Arkansas Reports, the SouthWestern Reporter, or any recognized legal database. In short, they are fictitious. We cannot evaluate arguments predicated on nonexistent precedent. The appellate process depends on accurate citation to existing authority so that we may assess the legal foundation of a party's claims. When a party cites fabricated cases, we are deprived of any meaningful ability to conduct review. Fictitious citations fail to comply with Rule 4-2 of the Rules of the Arkansas Supreme Court and Appellate Court. Rule 4-2(a)(7) requires that arguments contain citation to authority relied on and that citations conform to the required format. This rule is not aspirational. It ensures clarity, uniformity, and fairness in our appellate process. Hrdlichka's citations do not conform to the rule's formatting requirements and, more critically, do not correspond to any real authority.

Additionally, all counsel appearing before this court are bound to exercise professional judgment and responsibility and to comply with the rules of appellate procedure. Among other obligations, Rule 11 provides that by presenting a submission to the court, an attorney certifies "to the best of his knowledge, information and belief formed after reasonable inquiry, the document is well grounded in fact [and] is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Ark. R. App. P.–Civ. 11(a). At the very least, the duties imposed by Rule 11 require that parties read, and thereby confirm the existence and validity of, the legal authorities on which

they rely. Indeed, we can think of no other way to ensure that the arguments made based on those authorities are "warranted by existing law." *Id.* R. 11(a). These significant violations of our rules mandate dismissal of this appeal.

We further take this opportunity to address a growing and troubling practice: the submission of appellate briefs generated in whole or in part through artificial-intelligence tools that contain fabricated, inaccurate, or nonexistent legal citations. This practice presents serious risks to the integrity of judicial proceedings and undermines the administration of justice.

First, the appellate process depends on accuracy. Appellate courts review legal arguments grounded in established authority. When a party cites precedent, the court must be able to rely on the representation that the authority exists, that it stands for the proposition asserted, and that it has not been mischaracterized. Fabricated citations—whether created intentionally or through unverified use of artificial intelligence—waste judicial resources, delay resolution of cases, and erode confidence in the judicial system.

Second, all litigants, including pro se appellants, bear responsibility for the contents of their filings. The use of artificial intelligence does not relieve a litigant of the duty to verify the accuracy of citations. A brief containing nonexistent cases is no different, in effect, from a brief containing invented precedent.

Third, the court emphasizes that technology, including artificial intelligence, is not a substitute for legal judgment, verification, and professional diligence. For these reasons, the court strongly discourages pro se appellants and attorneys from submitting artificial-

5

intelligence-generated arguments without thorough verification. The integrity of the appellate process depends on the reliability of the record and the authenticity of the law cited. That responsibility remains squarely with the party who signs and submits the brief. Filings that contain fabricated or materially inaccurate citations may be struck, and appropriate sanctions, such as dismissal, may be imposed where warranted.

Finally, filing an appellate brief with fictitious citations in this court, for any reason, is a flagrant violation of the duties of candor Hrdlichka and every other appellant owes to this court. We regret that Hrdlichka has given us our first opportunity to consider the impact of fictitious cases being submitted to this court, an issue that has gained national attention in the rising availability of artificial intelligence. "Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court[;] [i]t does not matter if [generative A.I.] told you so." Maura R. Grossman, Paul W. Grimm & Daniel G. Brown, *Is Disclosure and Certification of the Use of Generative AI Really Necessary?* 107 Judicature, no. 2, 2023, at 68, 75. As a federal district court in New York recently noted,

> A fake opinion is not "existing law" and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (internal citation omitted) (dismissing a filing and sanctioning a party for submitting bogus legal citations generated by ChatGPT); *see also Model Rule of Prof'l* Conduct 3.3 (Am. Bar. Ass'n 2025) (imposing an ethical duty to demonstrate candor to the courts and prohibiting the making of false

6

statements of material fact or law). To protect the integrity of the justice system, courts around the country have been considering and enacting local rules specifically geared towards prohibiting or disclosing the use of generative artificial intelligence in court filings. We urge all parties practicing before this court, barred and self-represented alike, to be cognizant that we are aware of the issue and will not permit fraud on this court in violation of our rules.

Dismissed.

KLAPPENBACH, C.J., and BROWN, J., agree.

*Patrick Hrdlichka*, pro se appellant.

One brief only.