SLIP OPINION

Cite as 2015 Ark. 268

# SUPREME COURT OF ARKANSAS

No. CV–14–594

| | |
|---|---|
| ANDERSON'S TAEKWONDO CENTER CAMP POSITIVE, INC.<br>APPELLANT | **Opinion Delivered** June 18, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60-CV-2011-3536] |
| LANDERS AUTO GROUP NO. 1, INC. D/B/A LANDERS TOYOTA; STEVE LANDERS, SR.; STEVE LANDERS, JR.; AND SCOTT LANDERS<br>APPELLEES | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; COURT OF APPEALS OPINION VACATED. |

**JIM HANNAH, Chief Justice**

Appellant Anderson's Taekwondo Center Camp Positive, Inc. ("ATC") appeals an order of the Pulaski County Circuit Court granting summary judgment in favor of Landers Auto Group No. 1, Inc. d/b/a Landers Toyota; Steve Landers, Sr.; Steve Landers, Jr.; and Scott Landers (collectively "Landers") and dismissing with prejudice ATC's counterclaims and third-party complaint. For reversal, ATC argues that the circuit court erred in granting summary judgment because it had a license to use Landers's property and in granting summary judgment and dismissing ATC's counterclaims. Landers cross-appeals the denial of its request for attorney's fees and expenses. The court of appeals had affirmed in part and reversed and remanded in part. *See Anderson's Taekwondo Center Camp Positive, Inc. v. Landers Auto Group No. 1, Inc.*, 2014 Ark. App. 399. We accepted ATC's petition for review, and we affirm in

SLIP OPINION

part and reverse and remand in part.

## I. *Facts*

Steve Landers, Jr., and Richard Anderson had an oral agreement that ATC would use, free of charge, an empty bay at the site of Landers Toyota in Little Rock. ATC needed a space for its nonprofit taekwondo and youth-outreach activities. Landers did not want to incur costs associated with ATC's use of the bay, but Landers was aware that the bay need to undergo improvements before it was fit for ATC's use. ATC improved the bay, claiming that the improvements were worth approximately $100,000. Landers was aware that ATC had made improvements, but it did not stop ATC and expressed no concern about the improvements.

ATC used the bay for approximately one year, and Landers never asked ATC to pay any costs, utilities, or other expenses. In March 2011, after noticing that utility expenses for the building had significantly increased, Landers approached ATC about paying a portion of the utilities. Landers also asked ATC to sign a lease and to begin paying rent and utilities. ATC refused, claiming a lack of funds to make such payments in light of the extensive expenditures that it had made in improving the bay.

On July 9, 2011, Landers brought an action against ATC, alleging unlawful detainer and seeking a writ of possession, damages, costs, and attorney's fees. ATC answered the complaint, alleging that its lawful presence on the property, pursuant to an oral partnership agreement with Landers, allowed ATC to conduct its charitable operations on the property, free of charge, and that, in reliance upon the oral agreement, ATC had made improvements

to the property worth $100,000. ATC filed a counterclaim and third-party complaint, alleging specific performance, detrimental reliance, promissory estoppel, fraud, abuse of process, and breach of contract. Landers answered the counterclaim and third-party complaint. On April 19, 2013, Landers filed a motion for summary judgment, attaching excerpts from Richard Anderson's deposition. ATC did not timely respond to the motion, nor did it appear at the hearing on May 22, 2013. At the conclusion of the hearing on the summary-judgment motion, the circuit court orally granted the motion for summary judgment, issued a writ of possession, and dismissed all of ATC's counterclaims and third-party claims with prejudice. On May 30, 2013, the circuit court formally entered a summary-judgment order memorializing its findings at the hearing. Landers requested attorney's fees, but its motion was denied.

ATC sought review in the court of appeals, which affirmed in part and reversed and remanded in part. Landers petitioned this court for review of the court of appeals's decision, and we granted Landers's petition. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

## II. *Summary Judgment*

ATC now appeals the circuit court's grant of summary judgment. Landers cross-appeals the circuit court's denial of its request for attorney's fees and expenses.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Fed. Nat'l Mortg. Ass'n v. Taylor*, 2015 Ark. 78, 455 S.W.3d

SLIP OPINION

811. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *See id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *See id.* After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *See id.*

On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Repking v. Lokey*, 2010 Ark. 356, 377 S.W.3d 211. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *See id.*

### A. Unlawful Detainer

For its first point on appeal, ATC argues that the circuit court erred in granting summary judgment on the issue of unlawful detainer. Specifically, ATC asserts that, although Landers filed an unlawful-detainer action, it remained lawfully on the Landers property pursuant to a license, instead of a lease or other possessory interest, granted in the oral partnership agreement.

The unlawful-detainer statute, found at Arkansas Code Annotated section 18-60-304

(Supp. 2013), provides as follows:

> A person shall be guilty of an unlawful detainer within the meaning of this subchapter if the person shall, willfully and without right:
>
> . . .
>
> (2) Peaceably and lawfully obtain possession of any such property [lands, tenements, or possessions] and hold it willfully and unlawfully after demand made in writing for the delivery or surrender of possession thereof by the person having the right to possession, his or her agent or attorney[.]

Unlawful detainer is founded on a breach of contract. *McGuire v. Cook*, 13 Ark. 448 (1853).

With regard to the issue of a partnership, we have stated that a partnership is the association of two or more persons who carry on as co-owners a business for profit. *Courtney v. Courtney*, 296 Ark. 91, 752 S.W.2d 40 (1988). We have stated that a partnership does not exist when there is no proof of a partnership name, a method to divide profits or losses, or any other indicia of a partnership. *See id.*

ATC relied on *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 70 Ark. App. 169, 16 S.W.3d 265 (2000), in its amended answer and in its brief in support of its objection to the entry of summary judgment, arguing that a lease is not an estate in land and that a genuine issue of material fact remained to be decided on the lease-versus-license issue. This court reversed *Ultracuts*, 70 Ark. App. 169, 16 S.W.3d 265, affirming the circuit court's grant of summary judgment on the license-agreement, breach-of-contract claim and holding that a prior oral licensing agreement merged into and was superseded by a written agreement. *Ultracuts, Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 33 S.W.3d 128 (2000). Thus, ATC's reliance on *Ultracuts* on this issue is misplaced because this court overruled *Ultracuts*, 70 Ark. App. 169, 16 S.W.3d 265, on this specific issue. More significantly, ATC in this instance failed to meet

proof with proof that, in the absence of a written agreement, ATC occupied the Landers property pursuant to a license.

Further, ATC conceded in its answer that it occupied the Landers property pursuant to an oral partnership agreement. However, this partnership with Landers did not have a formal name, a bank account, an accountant, a tax return, any partnership meetings, or a mechanism for governing, voting, or dissolving the business. Thus, under *Courtney*, 296 Ark. 91, 752 S.W.2d 40, the alleged partnership between ATC and Landers did not exist, and ATC merely occupied the Landers premises at will. *See* Ark. Code Ann. § 4-59-102(a) (Supp. 2011) (stating that oral leases are at will). For these reasons, we hold that the circuit court properly granted summary judgment on the issue of unlawful detainer.

## B. ATC's Counterclaims

For its second point on appeal, ATC argues that the circuit court erred in granting summary judgment because Landers failed to present a prima facie case and that a genuine issue of material fact existed on each of ATC's following counterclaims.

### 1. *Abuse of process*

In proving an abuse-of-process claim, ATC needed to establish the following elements: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *S. Ark. Petroleum Co. v. Schiesser*, 343 Ark. 492, 36 S.W.3d 317 (2001). The test of abuse of process is whether a judicial process is used to extort

or coerce. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998). The key to the tort is the improper use of process after its issuance to accomplish a purpose for which the process was not designed. *Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003).

Here, in its counterclaim, ATC alleged abuse of process, stating that the eviction lawsuit was a "perverted" procedure "to accomplish an ulterior purpose . . . the extortion and coercion of ATC into signing a document [lease agreement] which changes the terms and conditions of the Partnership Agreement." In its brief in support of its motion for summary judgment, Landers cited *Union National Bank of Little Rock v. Kutait*, 312 Ark. 14, 846 S.W.2d 652 (1993), as authority for its contention that "to establish the tort, process must have issued after the initiation of the suit and used for a coercive or improper purpose." ATC did not respond. We conclude that ATC's initiation-of-suit allegation supporting an abuse-of-process claim is not enough to support an abuse-of-process claim. Because ATC did not offer proof with proof on this issue, we hold that the circuit court did not err in granting summary judgment on the abuse-of-process claim.

## 2. *Fraud*

ATC claimed that Landers fraudulently induced ATC into an oral partnership by promising it free use of its property for at least nine months. The five elements of the tort of fraud are (1) a false representation of a material fact, (2) knowledge that the representation is

false or that there is insufficient evidence upon which to make the representation, (3) intent to induce action or inaction in reliance upon the representation, (4) justifiable reliance on the representation, and (5) damage suffered as a result of the reliance. *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 255 S.W.3d 424 (2007).

As the factual basis for this claim, ATC stated in its counterclaim that Landers knowingly permitted ATC to construct and finish out in excess of $100,000 worth of improvements to the property and "feigned compliance" with a partnership agreement for more than nine months by allowing ATC to use the property without charge. ATC never established that Landers made a false representation of a material fact. Landers stated that it allowed ATC to occupy the premises free of charge for nine months; that ATC occupied the property at will; and that Landers's request for a written lease did not constitute fraud. Thus, we conclude that, without satisfying the first element, ATC's claim for fraud fails.

### 3. *Breach of contract*

We previously stated that unlawful detainer is founded on a breach of contract. *See, e.g.*, *McGuire*, 13 Ark. 448. We also previously noted that the parties did not enter into a written contract. Because we held that the circuit court did not err in granting Landers's motion for summary judgment on its complaint for unlawful detainer, we hold that the circuit court did not err in dismissing ATC's claim for breach of contract.

### 4. *Specific performance*

ATC further contends that the circuit court erred in granting summary judgment on the issue of specific performance. Specific performance is an equitable remedy that compels

the performance of an agreement or contract on the precise terms agreed upon. *Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325 (2004). The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 277 S.W.3d 562 (2008). This court cannot make a contract for the parties but can only construe and enforce the contract that they have made; if there is no meeting of the minds, there is no contract. *See id.* Here, because there was no contract between ATC and Landers, the circuit court correctly granted summary judgment on ATC's specific-performance claim. For these reasons, we see no error on the part of the circuit court, and we affirm on this point.

5. *Promissory estoppel and detrimental reliance*

ATC also argues that the circuit court erred in granting summary judgment on the issue of promissory estoppel. To prove promissory estoppel, a plaintiff must show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; (3) the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice can be avoided only by enforcement of the promise. *See, e.g.*, *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996). Detrimental reliance is an equitable principle that may be presented as an alternative to a breach–of–contract claim. *See id.*

In the case at bar, ATC sought to enforce the oral partnership agreement because ATC expended approximately $100,000 in labor and materials to renovate and make improvements to the Landers property. In its affidavit, ATC described its version of the oral agreement and

9

stated that it "relied upon and based its decision to expend significant time and money to move into the subject real property and renovate the same upon the mutual promises and agreements by and between [ATC and Landers]." Thus, in its affidavit, ATC provided proof with proof that there was an agreement or promise between the parties and that ATC allegedly relied on that agreement in expending money to improve the property. Given our well–established standard of review, a genuine issue of material fact remains as to whether ATC detrimentally relied on Landers's promise to use the property and what improvements were actually made by ATC. For these reasons, we reverse the circuit court's ruling on the issue of promissory estoppel and detrimental reliance and remand for further proceedings.

### III. *Attorney's Fees*

Landers cross-appeals the denial of its request for fees. The prevailing party in a breach-of-contract action may recover reasonable attorney's fees. Ark. Code Ann. § 16-22-308 (Repl. 1999). The decision to award attorney's fees is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, 378 S.W.3d 135.

Here, Landers's argument is meritless. Because there was no contract between the parties, the attorney's fees cannot be recovered in the instant case. For these reasons, we conclude that the circuit court did not abuse its discretion in denying Landers's request for attorney's fees.

Affirmed in part; reversed and remanded in part; court of appeals opinion vacated.

Special Justices VINCENT GUEST and HANI HASHEM join.

BAKER, J., concurs in part and dissents in part.

HART, J., and Special Justice ANDREW BAILEY concur in part and dissent in part.

DANIELSON, WOOD, and WYNNE, JJ., not participating.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** I concur with the majority that the circuit court erred in granting Landers' motion for summary judgment on Anderson's promissory-estoppel claim. However, I dissent from the remainder of the opinion because the circuit court erred in granting Landers' motion for summary judgment on Anderson's remaining claims.

When reviewing whether a motion for summary judgment should have been granted, this court determines whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Bomar v. Moser*, 369 Ark. 123, 127, 251 S.W.3d 234, 239 (2007). "Summary judgment is not proper . . . 'where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ.' The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. " *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 569-70, 11 S.W.3d 531, 536 (2000) (citations omitted) (quoting *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991)); *see also Muccio v. Hunt*, 2014 Ark. 35, at 3.

Here, based on the record before us, it is undisputed that the parties had an agreement

regarding the use of the bay. However, the nature and specifics of that agreement remain in dispute. Therefore, there are issues to be tried and inconsistent hypotheses might reasonably be drawn and reasonable minds might differ on the agreement. Accordingly, summary judgment was not appropriate, and I would reverse and remand the matter in its entirety to the circuit court.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.**

I agree with the majority's disposition of the promissory-estoppel and detrimental- reliance issues. The majority, however, also misapplies settled law regarding the way this court reviews appeals from the grant of summary judgment. Here, the circuit court erred in granting Landers's summary-judgment motion, which gave Landers permanent possession of the service bay and dismissed ATC's counterclaims.

Inexplicably, the majority fails to acknowledge that there were two proceedings in this case. The first was the unlawful-detainer proceeding, which did not result in a final, appealable order. The relief granted to Landers was conditional—ATC could continue to occupy the service bay only if it paid $2700 per month rent to Landers. Conditional orders are not final for purpose of appeal. *Corbit v. State*, 334 Ark. 592, 976 S.W.2d 927 (1998) (citing Ark. R. App. P.–Civ. 2(a)). Moreover, the unlawful detainer proceeding did not dispose of ATC's counterclaims. For this reason as well, the order entered pursuant to that proceeding was not a final order for purpose of appeal. *See Stockton v. Sentry Ins.*, 332 Ark. 417965 S.W.2d 762 (1998). However, the summary-judgment order was a final order, and an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the final order. *Hubbard v. Shores Group, Inc.,* 313 Ark. 498,

SLIP OPINION

855 S.W.2d 924 (1993)(Citing Ark. R. App. P. 2(b). Accordingly, both orders are properly before this court on review.

## I. *Summary Judgment and ATC's Counterclaims*

When Landers filed a complaint in unlawful detainer, ATC answered and counterclaimed for "specific performance, detrimental reliance, and promissory estoppel," fraud, abuse of process, and breach of contract. The majority's decision to affirm the circuit court's grant of summary judgment, resulting in the dismissal of ATC's counterclaims, ignores our well-settled law regarding summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Lipsey v. Giles*, 2014 Ark. 309, 439 S.W.3d 13. On appeal, we are required to determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave no disputed questions of material fact in issue. *Id.* In our review, we are required to view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* We focus not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.* Moreover, this court has held that, even when there is no material dispute as to the facts, on review, we will determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate; if so, summary judgment is not appropriate. *Id.*

It is the moving party's burden to prove it is entitled to summary judgment. While the adverse party must "meet proof with proof," there is no requirement that the opposing

party present again its very own copy of the deposition if the deposition that was introduced by the movant demonstrates that there exist in the case questions of material fact. It is proper to look to the pleadings and the findings in the unlawful detainer hearing in addition to the deposition. In the case before us, the movant has failed to demonstrate that it is entitled to summary judgment.

Landers's summary-judgment motion[1] relied on the faulty premise that because Landers and ATC had not agreed to form a *business* partnership in their oral agreement, as a matter of law, ATC had no the right to use the service bay. Both the circuit court and the majority—without any basis and despite contrary evidence—have seized upon this rationale while ignoring the undisputed fact that there was an agreement between Landers and ATC concerning the use of the service bay. Although the written order does not explain why the circuit court granted summary judgment, the circuit court makes it abundantly clear in its ruling from the bench:

---

[1] The motion stated:

a. Since there was not a written lease, Anderson occupied the premises at will. A verbal partnership did not exist.

b. The oral partnership cannot be specifically enforced. The doctrine of promissory estoppel is not applicable.

c. Landers did not fraudulently induce Anderson into an oral partnership. The elements of fraud are not present.

d. The elements of abuse of process are not present.

e. An alleged oral partnership agreement does not exist, thus Landers did not breach a contract.

f. Anderson's occupancy violates the rule against perpetuities.

SLIP OPINION

The Court: The only way that they have the purported legal right to occupy the premises is through the oral partnership that's the subject of the motion.

Mr. Carter (attorney for Landers): I think yes, Your Honor.

The Court: The alleged oral partnership that's the subject of —

Mr. Carter: Right, the alleged oral partnership, which—and the basis of their whole defense to occupy it since . . . the oral partnership doesn't take it out of the statute of frauds, and the statute of frauds says that if it's an oral lease, it's at will, so I think —

The Court: Well I mean, I agree with you. I believe the case law that you cited was applicable, and Mr. Anderson's statements or lack of statements concerning the genesis of this alleged partnership prove your side of the equation. Well I'm going to grant your motion then,

This faulty premise, asserted by Landers and found as a fact by the circuit court, is clearly wrong as a matter of law—there are numerous ways in which a party can acquire the right to use property that does not involve forming a business partnership. This ruling also involves the circuit court's finding of facts, specifically, the circuit court found that ATC alleged the formation of a business partnership and failed to prove it with specificity. Suffice it to say, a circuit court relied on this finding of fact to grant summary judgment. A trial court is prohibited from making findings of fact in a summary-judgment proceeding.

ATC never claimed to have entered into a "business partnership"[2] with Landers. What Chief Master Anderson described in his deposition—the only "proof" appended to Landers's

---

[2]"Partnership," when used as a legal term of art has a definite meaning. Under Arkansas's Uniform Partnership Act, a partnership is defined as "an association of two (2) or more persons to carry on as co-owners a business for profit." *Rigsby v. Rigsby*, 346 Ark. 337, 57 S.W.3d 206 (2001) (quoting Ark. Code Ann. § 4-42-201(1) (Repl.1996)). It also noted a common-law definition, "a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them." *Id*.

summary judgment motion—was a type of mutually beneficial sponsorship arrangement.[3]

ATC would receive free use of the service bay and Landers would reap the benefit of the

goodwill that allowing ATC to use the bay would engender in Little Rock's African-

American community, where Chief Master Anderson and ATC were well respected. This

type of "partnership" is quite common; organizations such as the NCAA and even the

University of Arkansas Athletic Department have corporate "partners." Beyond the goodwill

that Landers reaped, it also derived the benefit of ATC cleaning, repairing, and correcting

---

[3]Chief Master Anderson stated that in March 2010, Steve Landers, Jr. offered ATC the use of a maintenance bay at their used-car dealership on University Avenue in Little Rock. Landers told him, "You can stay there as long as we're going to be there." Landers told him that they had no intention of moving and that they would never need the space that he was offering. Chief Master Anderson told him that he would take the offer back to the ATC board of directors. A second meeting with Steve Landers, Jr., took place at the service bay. Chief Master Anderson recalled that the premises was "in pretty bad shape," with objects hanging from the ceiling, iron sticking up from the floor, and sewage backed up and pooling. According to Chief Master Anderson, Steve Landers, Jr. reiterated that ATC could use the space as long as Landers was there. He also reiterated that Landers did not wish to absorb any of the costs of ATC using the service bay. Chief Master Anderson also stated that he discussed how his reputation and ATC putting "Landers Toyota" on all of its business cards and mentioning Landers in radio spots would help Landers sell cars, and these ideas were enthusiastically received. Chief Master Anderson inquired about putting everything into a written lease, but he stated that Steve Landers, Jr. refused because Landers was leasing the complex and had no authority to sublease.

Chief Master Anderson stated that ATC immediately began to make the service bay usable. Construction costs exceeded $100,000. He noted that Steve Landers, Sr., inspected the work and commented about "how nice it looked." When a Camp Positive sign was made, it included both the names of ATC and Landers and was approved by Steve Landers, Jr.

According to Chief Master Anderson's deposition, the partnership was formed when Steve Landers, Jr. "shook my hand and told me everything was a go and let's do it." He further stated that the partnership owns advertising rights, but does not have a bank account or file partnership tax returns. Chief Master Anderson asserted that his and Camp Positive's contribution to the partnership—essentially how they benefitted Landers—consisted of lending their names and goodwill and ability to draw customers to the Landers used-car dealership.

plumbing problems that included sewage pooling in the service bay. Chief Master Anderson's estimate that ATC expended more than $100,000 on the project is undisputed.

Instead of recognizing the need to define the relationship—which cannot be done in a summary-judgment proceeding—the circuit court erroneously, seized on what the relationship was not—a *business* partnership—and proceeded as though that fact was dispositive of all the issues in this case. As noted, the existence of an agreement, labeled "partnership agreement" by Chief Master Anderson, is not disputed. Conversely, the nature of that agreement certainly was disputed. Accordingly, this issue is a matter of disputed fact that cannot legitimately be disposed of in a summary-judgment proceeding.

The majority's rationale for affirming the circuit court's obvious error is even more troubling. The majority has engaged in a type of de novo review, finding facts and positing arguments that were never made by Landers.

### A. Possession of the Service Bay

Despite the issuance of a conditional writ of possession, the issue of ATC's right to occupy the service bay remained unresolved until the circuit court granted summary judgment. In opposing the complaint in unlawful detainer, ATC argued that the statute of frauds was inapplicable to this case. It asserted that it occupied the service bay pursuant to an oral agreement and by its occupancy and making improvements, it took the oral agreement out of the statute of frauds. *See Harrison v. Oates*, 234 Ark. 259, 351 S.W.2d 431 (1961); *Brockway v. Thomas*, 36 Ark. 518 (1880). This presents an issue of material fact that renders the grant of summary judgment inappropriate.

### B. Abuse of Process

The majority correctly characterizes ATC's allegations in its complaint—that Landers "initiated a suit in unlawful detainer and perverted it to accomplish an ulterior purpose . . . the extortion and coercion of ATC into signing a document [lease agreement] which changes the terms and conditions of the Partnership Agreement." Further, the majority correctly notes that Landers, in its brief in support of its summary-judgment motion, cites *Union National Bank of Little Rock v. Kutait*, 312 Ark. 14, 846 S.W.2d 652 (1993), as authority for its contention that "to establish the tort, process must have issued after the initiation of the suit and used for a coercive or improper purpose." But then, without citation to authority, the majority states that

> ATC's initiation-of-suit allegation supporting an abuse-of-process claim is not enough to support an abuse-of-process claim. Because ATC did not offer proof with proof on this issue, we hold that the circuit court did not err in granting summary judgment.

The holding that Landers ascribes to *Kutait* is spurious. The *Kutait* court cited W. Prosser, Law of Torts § 121 (4th ed. 1971) to establish the elements of the tort of abuse-of-process action. It stated:

> There must be: (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success, but, (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a wilful act in the use of process not proper in the regular conduct of the proceeding.

ATC's counterclaim alleges facts to support each element. In its brief in support of its summary-judgment motion, Landers misrepresented the holding in *Kutait*. There, the court reversed a jury verdict, holding that the appellee failed to present proof that the defendant bank had abused the process. *Id.* It acknowledged that after filing suit, during negotiations the bank offered to drop its suit if the plaintiff prevailed upon his brother to drop a suit against

the bank in federal court. *Id.* However, after the offer was rejected, the bank simply dismissed its lawsuit. *Id.* The *Kutait* court stated that its holding was intended to reject the appellee's invitation to extend the tort of abuse of process to situations in which a plaintiff merely files a vexatious lawsuit. *Id.* In the case before us, however, Landers followed through with its lawsuit and persuaded the circuit court to back up its demand for a monthly rent of $2750 after Landers had induced ATC to relocate there by promising ATC that it could use the service bay free of charge. Misrepresenting a holding in one of our cases does not establish a prima facie entitlement to judgment as a matter of law.

Likewise, the majority's statement that ATC did not "offer proof with proof" cannot support an affirmance of the circuit court's erroneous grant of summary judgment. The only proof offered by Landers in support of its summary-judgment motion was Chief Master Anderson's deposition. In it, Chief Master Anderson recounts how Steve Landers, Sr. threatened to "lock up" ATC's facility if they did not sign a lease. When you strip away the circuit court's erroneous acceptance of Landers's argument that, because there was no business partnership agreement, there was no agreement, this "proof" in Chief Master Anderson's deposition tends only to support ATC's abuse-of-process claim.

## C. Fraud

Although the majority correctly cites the elements of fraud, it nonetheless demonstrates a misunderstanding of the record in this case. The majority asserts that "ATC never established that Landers made a false representation of material fact." In doing so, the majority ignores the only proof offered in support of Landers's summary-judgment motion—Chief Master Anderson's affidavit. Chief Master Anderson stated that Landers had

19

told him that ATC could use the service bay, free of charge, for as long as Landers was at the University Avenue facility. On the basis of this assurance by Landers, ATC spent time, effort, and approximately $100,000 cleaning and making necessary repairs to the service bay.

### D. Breach of Contract

The majority's disposal of this issue does not follow the argument made to the circuit court, is contrary to law. As noted previously, in Landers's summary-judgement motion, it asserted that it was entitled to summary judgment because "[a]n alleged oral partnership agreement does not exist, thus Landers did not breach a contract." In its supporting brief, Landers asserted:

> Anderson's breach of contract claim is premised on the existence of the oral partnership agreement. The alleged oral partnership agreement did not exist as a matter of law. Anderson occupied the premises at the will of Landers. Ark. Code Ann. § 4-59-102. The filing of this unlawful detainer action did not breach the oral partnership agreement, since a partnership never existed.

The circuit court made no findings with regard to the counterclaim other than asserting that it had reviewed "the file, the Motion, the Brief in Support of the Motion for Summary Judgment, the supporting papers, and hearing argument of counsel."

Inexplicably, in affirming the circuit court, the majority asserts the following:

> We previously stated that unlawful detainer is founded on a breach of contract. *See, e.g., McGuire*, 13 Ark. 448. We also previously noted that the parties did not enter into a written contract. Because we held that the circuit court did not err in granting Landers's motion for summary judgment on its complaint for unlawful detainer, we hold that the circuit court did not err in dismissing ATC's claim for breach of contract.

The majority is not affirming the circuit court's grant of summary judgment on this point for any reason that was before the circuit court. The circuit court accepted Landers's contention

20

that there was no partnership agreement, "as a matter of law," and therefore there was no breach of contract. The majority, however, purports to affirm the circuit court's dismissal of ATC's counterclaim for breach of contract because the circuit court was correct in granting Landers's motion for unlawful detainer.

It is undisputed that there was an agreement between ATC and Landers regarding the use of the service bay. Furthermore, in the only proof before the circuit court, Chief Master Anderson's deposition, Chief Master Anderson stated that the partnership agreement was an arrangement by which Landers allowed ATC to use the service bay and ATC would give Landers a share of the goodwill and stature that it enjoyed in the Little Rock African-American community. Sharing this goodwill included adding Landers's name to ATC signs and fliers and mentioning Landers in its radio spots. Because it is uncontested that an agreement, referred to by ATC as a "partnership agreement," existed, the circuit court clearly erred in dismissing ATC's counterclaim for breach of contract in summary judgment. The majority is apparently of the opinion that a license or a lease may not be entered into by these parties absent a business partnership agreement.

In his deposition, Chief Master Anderson stated that ATC's contribution to the partnership, in addition to fixing up the derelict service bay, included giving Landers "advertising rights" and lending Landers Chief Mater Anderson and ATC's name and goodwill so as to draw customers to the Landers used-car dealership. Accordingly, whether there was a binding contract involving use of the service bay is itself at least a mixed question of law and fact.

E. Specific Performance

The majority opinion does not seem to convey an understanding that Landers relied almost exclusively on the fact that there was no business partnership between it and ATC as the reason for disposing of ATC's counterclaim in summary judgment. In its supporting brief, Landers asserted that ATC was seeking specific performance of the partnership agreement, but specific performance was not available because the verbal partnership agreement "did not exist as a matter of law." The majority purports to affirm on this point "because there was no contract between ATC and Landers." Obviously, the majority chose to find a different fact from that found by the circuit court. As noted previously, it is undisputed that there was an agreement between ATC and Landers. Neither the majority's nor the circuit court's rationale is correct.

The majority holds that no contract existed, a conclusion that is unsupported by the facts. ATC, both through its pleadings and Chief Master Anderson's deposition, raises an issue of material fact regarding whether ATC removed the oral contract from statute of frauds by taking possession and making improvements to the service bay. Accordingly, summary judgment was inappropriate.

## II. *The Unlawful Detainer Action and the Writ of Possession*

The circuit court erred in finding, at the unlawful detainer hearing, that ATC's use of the service bay at the Landers University Avenue complex was not pursuant to a "license." As this court noted in *El Paso Production Co. v. Blanchard*, 371 Ark. 634, 269 S.W.3d 362 (2007) (citing *Harbottle v. Central Coal & Coke Co.*, 134 Ark. 254, 203 S.W. 1044 (1918)), a lease divests the owner/lessor of possession and the right to possession and gives the right to possess the property to the lessee/tenant, whereas a license conveys no interest in land, just

22

an authority or power to use land in some specific way. In the case before us, it is undisputed that Landers gave ATC permission to use the service bay to conduct only its outreach program for disadvantaged youths. It was not disputed that under its own lease with B&C Investments, Landers had no authority to sublease the premises and Landers never characterized its grant of permission to use the service bay as a lease. Accordingly, the circuit court clearly erred as a matter of law in refusing to find that ATC's use of the premises was pursuant to a license. Further, it was error to use this finding of fact as a basis for granting summary judgment.

> Our unlawful detainer statute states in pertinent part:
>
> A person shall be guilty of an unlawful detainer within the meaning of this subchapter if the person shall, willfully and without right:
>
> (1) Hold over any land, tenement, or possession after the determination of the time for which it was demised or let to him or her, or the person under whom he or she claims;
>
> (2) Peaceably and lawfully obtain possession of any land, tenement, or possession and hold it willfully and unlawfully after demand made in writing for the delivery or surrender of possession of the land, tenement, or possession by the person having the right to possession or his or her agent or attorney;
>
> (3) Fail or refuse to pay the rent for the land, tenement, or possession when due, and after three (3) days' notice to quit and demand made in writing for the possession of the land, tenement, or possession by the person entitled to the land, tenement, or possession or his or her agent or attorney, shall refuse to quit possession;

A determination of whether the circuit court incorrectly granted a writ of possession depends on our construction of this statute. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Evans v. Hamby*, 2011 Ark. 69, 378 S.W.3d 723. The purpose of the rules of statutory construction is to give

effect to the intent of the legislature. *State v. Colvin*, 2013 Ark. 203, 427 S.W.3d 635. The first rule of statutory construction is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning, *Smith v. Simes*, 2013 Ark. 477, 430 S.W.3d 690. Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Colvin*, *supra*. Statutes relating to the same subject must be construed together and in harmony, if possible. *Id*.

Arkansas Code Annotated section 18-60-305 (Repl. 2003), from the same code section states that our unlawful-detainer statute applies to "all estates, whether freehold or less than freehold." Again turning to *El Paso Production Co. v. Blanchard*, we note that "a license in respect to real estate is an authority to do a particular thing upon the land of another without possessing an estate therein." 675 Ark. at 645, 269 S.W.3d at 644. By the plain wording of section 18-60-305, an action in unlawful detainer can exist only if it involves an estate in land. Because it is a fact question whether Landers did and could legally grant ATC an estate in land, the circuit court improperly granted a writ of possession for unlawful detainer in a summary-judgment proceeding. Likewise, granting summary judgment on the basis of the erroneous finding that ATC's use of the service bay was pursuant to a verbal partnership that did not exist was error. This case should be reversed and remanded on this point.

The majority also errs when it concludes that ATC's failure to provide proof that it had entered into a business partnership with Landers has any effect whatsoever on ATC's right to use the service bay. While the existence of this agreement was not disputed, the legal effect of the agreement certainly was. In affirming the circuit court on this issue, the majority seems

to be saying that the only way ATC could have acquired a right to use the service bay was if Landers's agreement to let ATC use it was only binding if the parties had entered into a business partnership. This reasoning does not comport with the black-letter law that a lease is a contract that grants the lessee an estate in land for some period of time. *See Harbottle v. Central Coal & Coke Co.*, 134 Ark. 254, 203 S.W. 1044 (1918). Obviously, a party can—and almost all parties do—acquire the right to use another's property through means other than a partnership agreement.

It is noteworthy that the majority cites the venerable case of *McGuire v. Cook*, 13 Ark. 448 (1853), for the proposition that "unlawful detainer is founded on a breach of contract." Yet, it does not further explore the only manifestation of mutual assent, the so-called "partnership agreement." The nature of this agreement between ATC and Landers is an issue of fact that renders this case is irresolvable through summary judgment.

This case should be reversed and remanded in its entirety.

Special Justice ANDREW BAILEY joins.

*Ball & Stuart, PLLC*, by: *Jason A. Stuart*, for appellant.

*James, Carter & Coulter, PLC*, by: *Daniel R. Carter*, for appellee.